Maria Crimi Speth, #012574
David S. Gingras, #021097
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Tel: (602) 248-1000
Fax: (602) 248-0522

Attorneys for Xcentric Ventures, L.L.C.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ECOMMERCE INNOVATIONS, L.L.C., a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1 through 10,<br><br>Defendants. | Case No.: 2:08–MC–00093<br><br>**NON-PARTY XCENTRIC VENTURES, L.L.C.'s MOTION FOR LEAVE TO FILE SUR-REPLY RE: MOTION TO COMPEL** |

Non-party XCENTRIC VENTURES, L.L.C. ("Xcentric") respectfully requests leave to file a Sur-Reply to Plaintiff ECOMMERCE INNOVATIONS, L.L.C.'s ("Ecommerce") Reply re: Motion to Compel Compliance With Subpoena.

Ecommerce's Reply brief contains entirely new evidence—specifically a declaration of its manager, David Strager—which was not included in Ecommerce's initial Motion to Compel. The Reply also (for the first time) identifies the actual statements which Ecommerce alleges are defamatory. Because Ecommerce has raised these new arguments and evidence in its Reply, Xcentric has not had any opportunity to respond. A Sur-Reply is therefore necessary. Ecommerce's concedes this in its Reply (p. 10:13–15). The proposed Sur-Reply is attached as **Exhibit A**.

DATED this 15th day of October 2008.

**JABURG & WILK, P.C.**
s/David S. Gingras
Maria Crimi Speth
David S. Gingras
Attorneys for Xcentric Ventures, L.L.C.

10297-1/DSG/DSG/683803_v1

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2008 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Donnelly A. Dybus, Esq.
**BUCHALTER NEMER**
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754

Attorneys for Plaintiffs

With a COPY of the foregoing delivered to:

Honorable David G. Campbell
United States District Court
District of Arizona

s/Debra Gower

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

# EXHIBIT A

# PROPOSED SUR-REPLY

Maria Crimi Speth, #012574
David S. Gingras, #021097
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
Tel: (602) 248-1000
Fax: (602) 248-0522

Attorneys for Xcentric Ventures, L.L.C.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ECOMMERCE INNOVATIONS, L.L.C., a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1 through 10,<br><br>Defendants. | Case No.: 2:08–MC–00093<br><br>**NON-PARTY XCENTRIC VENTURES, L.L.C.'s [PROPOSED] SUR-REPLY TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS** |

Non-party XCENTRIC VENTURES, L.L.C. ("Xcentric") respectfully submits the following Sur-Reply to Plaintiff ECOMMERCE INNOVATIONS, L.L.C.'s ("Ecommerce") Motion to Compel Compliance With Subpoena. Xcentric also requests an award of sanctions pursuant to Fed. R. Civ. P. 56(g).

### I. <u>INTRODUCTION</u>

Ecommerce harshly criticizes Xcentric for taking steps to protect the rights of authors who wish to speak anonymously. This attack is inappropriate considering the important Constitutional questions involved here.

Among the myriad laws, rules and regulations at work in this nation, the First Amendment ranks among the most sacred; "[T]he freedom to speak one's mind is not only an aspect of individual liberty–and thus a good unto itself–but also is essential to the common quest for truth and the vitality of society as a whole." *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876 (1988) (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 503–04, 104 S.Ct. 1949, 1961 (1984)).

4

Though sometimes viewed with suspicion, anonymous speech falls squarely within the First Amendment's shield and is widely considered a healthy part of a free society:

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. <u>It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation-and their ideas from suppression-at the hand of an intolerant society</u>. The right to remain anonymous may be abused when it shields fraudulent conduct. But political speech by its nature will sometimes have unpalatable consequences, and, <u>in general, our society accords greater weight to the value of free speech than to the dangers of its misuse</u>.

*McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 357, 115 S.Ct. 1511, 1524 (1995) (emphasis added). The First Amendment's shield is, of course, not absolute—it does not extend to defamatory speech. By the same token, "The First Amendment was designed to protect offensive speech, because nobody ever tries to ban the other kind." Mike Godwin, Staff Counsel for the Electronic Frontier Foundation (quoted in *EFF Quotes Collection 6.0*, May 18, 1995; http://w2.eff.org/Misc/EFF/?f=quotes.eff.txt).

With these competing standards in mind, although it never endorses defamatory or illegal speech, Xcentric takes great pride in its efforts to protect the First Amendment rights of its users consistent with the law. Ecommerce understandably expresses frustration at this, arguing that it has been defamed and that it is therefore entitled to learn the identity of the author involved.

However, merely labeling a statement as false or defamatory is not the end the analysis, it is the beginning. Consistent with this Court's opinion in *Best Western Int'l Inc. v. Doe* and the Arizona Court of Appeals' decision in *Mobilisa v. Doe*, courts must serve a gatekeeper function to safeguard the First Amendment in matters relating to anonymous online speech. Valid claims will easily pass muster and will not be hindered, while marginal or meritless claims will be promptly discarded. The dispositive question, then, is whether this case presents facts and evidence sufficient to move forward. Because this case does not, the Motion to Compel should be denied.

5

## II. ARGUMENT

For the first time, Ecommerce's Reply identifies five specific statements which it alleges are false and defamatory. Also, for the first time, Ecommerce offers evidence in the form of a declaration of an officer—David Strager—which purports to show that each of the five statements is false and defamatory.

Keeping in mind that Xcentric's role at this point is <u>not</u> to defend the anonymous author's motives, the question is whether each statement is actually capable of a defamatory meaning and, if so, whether Ecommerce has provided proof that each statement is false. Each statement will be addressed in turn.

### Statement #1
"Inspired Silver is an unethical online retail and Jewelry catalog company who would rather knock off jewelry designs being produced by their current manufacturer or wholesaler instead of paying their bills … ."

### Evidence From Strager Declaration
"Inspired Silver does not engage in, and has never been sued for, trademark, copyright or patent infringement and does not 'knock-off' <u>proprietary designs</u> of other manufacturers or wholesalers. In addition, Inspired Silver is current on all of its bills to its vendors, <u>save any that may be subject to legitimate dispute for lack of proper tender</u>." (emphasis added)

Viewed together, Statement #1 contains two parts. The first claims that Inspired Silver "knocks off" (copies) jewelry designs. The second claims Inspired Silver does not pay its bills. Incredibly, Mr. Strager's declaration (when read closely) fails to actually deny either of these claims.

First, as for whether Inspired Silver pays its bills, Mr. Strager's declaration <u>concedes</u> that the company does not pay certain bills which are, in his words, subject to a "legitimate dispute". This admission renders that part of Statement #1 substantially true and therefore non-actionable as a matter of law; "the defendant need not prove the literal truth of every detail, but must only prove that the statements are substantially true. Substantial truth is an absolute defense to a defamation action in Arizona." *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 355, 819 P.2d 939, 942 (1991).

6

10297-1/DSG/DSG/683803_v1

As to the second part of Statement #1 which accuses Inspired Silver of "knocking off" jewelry designs by other manufacturers, Mr. Strager carefully states that Inspired Silver does not "knock off *proprietary designs* of other manufacturers." Of course, Statement #1 does not claim that only "proprietary" designed have been copied; it simply accuses Inspired Silver of "knocking off" jewelry designs. In addition, Statement #1 does not say that Inspired Silver has ever been sued for copyright or trademark infringement so Mr. Strager's denial of those points is irrelevant.

However, even if Mr. Strager had unequivocally denied selling counterfeit products on his website, this denial would not be sufficient to support Ecommerce's burden in light of the overwhelming evidence to the contrary. Specifically, as explained in the Declaration of David S. Gingras submitted herewith, a cursory review of Ecommerce's website www.InspiredSilver.com shows that the company is engaged in blatant and widespread copying of jewelry designs by such famous manufacturers as Tiffany & Co. In fact, Ecommerce's theft of Tiffany's products is so brazen that the site actually brags that its products "look like the *real thing*!" Gingras Decl. ¶ 13, **Exhibit A-1**.

| Genuine Tiffany Ring (**Exhibit A**) | Counterfeit Ring (**Exhibit A-1**) |
|---|---|
|  |  |

10297-1/DSG/DSG/683803_v1

As explained in the declaration of counsel submitted herewith, the examples shown above is only one of numerous instances of Ecommerce creating and selling identical copies of Tiffany's exclusive jewelry designs. Far from being an isolated or innocent act of copying, Ecommerce's website proudly explains the source of its "inspired" products—they are actually "inspired," meaning *copied from*, famous designers:



In light of the clear and undisputed evidence that Ecommerce <u>does</u>, in fact, "knock off" the jewelry designs of third parties such as Tiffany & Co., no reasonable juror could believe Mr. Strager's false denial of this accusation. As such, Ecommerce has failed to demonstrate the existence of a *genuine* factual dispute sufficient to survive a hypothetical Motion for Summary Judgment on this issue; "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, <u>there is no 'genuine issue for trial.'</u>" *Scott v. Harris*, 550 U.S. ___, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)

8

(emphasis added) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In other words, although legitimate factual disputes normally preclude summary judgment, this principle does not apply when no reasonable juror could possibly believe one side's story:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott*, 550 U.S. at ___, 127 S.Ct. at 1776 (finding that where police chase was captured on videotape, summary judgment was proper even though fleeing suspect offered version of facts which were clearly inconsistent with events recorded on video); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11 (1986) (recognizing that summary judgment is properly granted where no reasonable juror could find in favor of the non-moving party).

### Statement #2

"Currently they [Inspired Silver] owe my friend close to $25,000.00 (and it is over 190 days) wholesale cost to Accessories Rock but instead of honoring their fiduciary and moral obligations, would rather have another company make up the goods where the quality of those same goods also comes into question."

### Evidence From Strager Declaration

"The real story as to Accessories Rock is that I ordered and returned product with this company in a customary fashion. Accessories Rock then attempted to make a further shipment to me C.O.D., which I rejected and returned. It then claimed that my company owed it between $6,000 and $8,000 based on these orders, which I disputed. I have been in discussion with Accessories Rock's attorney regarding our dispute of less than $8,000. Under no circumstance does my company owe $25,000 to Accessories Rock."

Statement #2 simply claims that Inspired Silver owes money to a third party company called "Accessories Rock". Mr. Strager's declaration does not deny that a

9

1  dispute exists between the two companies; he simply contends the amount at issue is "less
2  than $8,000" rather than "close to $25,000".

3  Whatever it may be, the true amount of this dispute is irrelevant. The test in this
4  situation is whether the statement as-written would have a materially different effect in the
5  mind of a reader than the literal truth would have. *See Read*, 169 Ariz. at 355 ("the issue
6  is whether the "gist" or "sting" of the statements published in The Republic would have
7  made a material difference to a reader had the newspaper published the literal truth of
8  [Plaintiff's] conviction and sentence.") An inter-business dispute over $8,000 is not
9  materially different than a dispute over "close to $25,000". As such, Ecommerce has
10 failed to prove that Statement #2 is actionable.

**Statement #3**
"They find these companies by attending various jewelry trade shows, then use their company image of being a large company loving their products and wanting to order from them. What the supplier doesn't know if that they are about to be ripped off themselves."

**Evidence From Strager Declaration**
"Inspired Silver does not 'rip-off' its vendors."

The determination of whether a statement is capable of a defamatory meaning is a threshold question of law for the Court. *See Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005 (citing *Dworkin v. Hustler Magazine, Inc.*, 668 F.Supp. 1408, 1415 (C.D.Cal. 1987) ("It is for the court to decide [whether a statement is actionable defamation] in the first instance as a matter of law.") (brackets in original)). When performing this task, the Court "must interpret [the] statement 'from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made.'" *Knievel*, 393 F.3d at 1074 (quoting *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993)).

Based on Mr. Strager's declaration, the only question is whether Inspired Silver "rips off" its suppliers. Viewed in-context, this allegation appears to be the author's

10

general opinion, not an assertion of fact. As such, it is non-actionable. *See Jaillett v. Georgia Television Co.*, 238 Ga.App. 885, 890–91 520 S.E.2d 721, 725–26 (Ga.App. 1999) (holding that use of term "rip-off" to describe an unnecessary air conditioning repair was protected statement of opinion, not fact).

As the Georgia Court of Appeals explained in *Jaillett*, when a reader offers an explanation of the factual basis for an opinion, and then simply concludes with a statement containing the opinion itself, such matters are non-actionable:

> The requirement that, to be actionable, a statement of opinion must imply an assertion of objective facts about the plaintiff … unquestionably excludes from defamation liability not only statements of rhetorical hyperbole ... but also statements clearly recognizable as pure opinion because their factual premises are revealed .... Both types of assertions have an identical impact on readers-neither reasonably appearing factual- and hence are protected equally under the principles espoused in *Milkovich*.

*Jaillett* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)); *see also Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807, 813 (N.Y. 2005) (holding statements posted on website were non-actionable opinions accusing plaintiff of being a "blatantly dishonest company"; a "crooked company"; that has "been ripping off its contract holders for a while"; also observing, "in the context of statements pertaining to issues of consumer advocacy, courts have been loathe to stifle someone's criticism of goods or services.") (emphasis added)  (citing extensive authority for premise); *see also Global Telemedia International, Inc. v. Doe*, 132 F.Supp.2d 1261, 1267 (C.D.Cal. 2001) (finding that statements posted on Internet message board accusing company management of lying and "screw[ing investors] out of [their] hard earned money …" were non-actionable as a matter of law because the statements were filled with "hyperbole, invective, short-hand phrases and language" which suggested the statements were the author's opinions).

Here, to say that Ecommerce might "rip off" a supplier in the future is simply the author's opinion about what the company might do based on the author's description of

11

Ecommerce's refusal to pay a debt to his friend's company and based on Ecommerce's clear record of copying and "knocking-off" of products from others such as Tiffany's. The author's opinion is protected speech and is not defamatory as a matter of law.

### **Statement #4**

"It has been noticed that a company called Athra was making up their goods. If you go the following links, www.inspiredsilver.com, and www.athra.com, you will see all the same styles which are Accessories Rock styles. When my friend initially got into the business, he bought a few things from Athra. The main problem he indicated is the quality of the cubic zirconia stones was not nearly as clear as they should be. According to my friend, Inspired Silver claimed these goods were not items that sold, and returned them after many months of holding them, but instead obviously gave a copy of them to Athra. Inspired Silver is a company lacking the morals and ethics that one should seek when doing business."

### **Evidence From Strager Declaration**

"In actuality, prior to reading the defamatory posting, I had never heard of nor done any business with Athra. Upon reviewing the posting, I reviewed the Athra website referenced in the post and saw that it had misappropriated some images from my company's website. I then personally contacted Athra to demand the immediate removal of those images. Inspired Silver has never done any business with Athra."

Based on a review of Statement #4 and Mr. Strager's declaration, it is unclear exactly what Ecommerce believes is false or defamatory. Other than denying a business relationship with a third party company called "Athra", Mr. Strager does not appear to dispute the bulk of Statement #4 which generally claims that certain goods sold by Athra were of poor quality.

To the extent Statement #4 again accuses Ecommerce of "lacking morals and ethics" these are clearly protected statements of opinion, not fact. *See Held v. Pokorny*, 583 F.Supp. 1038 (D.C.N.Y. 1984) (statement accusing attorney of engaging in "immoral" conduct was statement of opinion and not defamatory as a matter of law); *Henry v. Halliburton*, 690 S.W.2d 775, 789–90 (Mo. 1985) (accusations stating that an insurance agent was a "fraud" motivated by "greed" for the purpose of "fleecing a customer" were all non-actionable opinions; "The law is well-settled that individuals may

12

use pejorative or vituperative language when referring to another as long as they do not suggest specific criminal conduct, which would be a statement of fact.")

### Statement #5

"[A]nd just so you know, they are charging you 3 or 4 times more than what he sold it to them for. If you come to my friend's site www.accessoriesrockjewelry.com, assuming he has it as it is still in style, he will sell it for much less than what you will pay buying it through them, and most likely much better quality, after all, they stuck him with excess inventory."

### Evidence From Strager Declaration

"In actuality, while there is a price difference, the quality of the jewelry is the same."

Little need be said regarding Statement #5. Mr. Strager does not dispute that his company charges more for its products than some competitors (which is, of course, not defamatory in any case). The only alleged defamation is the suggestion that Accessories Rock will sell the same items albeit "most likely much better quality." Mr. Strager contends the quality is the same.

No citation is needed to explain that the author's subjective views about which company sells better quality fake jewelry are opinions, not facts.

### III. SANCTIONS SHOULD BE ORDERED PER RULE 56(g)

In addition to requesting that Ecommerce's Motion to Compel be denied, Xcentric further requests an award of attorney's fees pursuant to Rule 56(g) which states:

> **Affidavit Submitted in Bad Faith**. If satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, <u>the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result</u>. An offending party or attorney may also be held in contempt.

Fed. R. Civ. P. 56(g) (emphasis added). As explained above, it is clear that Mr. Strager's declaration submitted to the Court contains false statements to the effect that Inspired Silver does not steal the designs of famous third party manufacturers. Mr. Strager's own website proves that this is exactly what Inspired Silver does.

13

10297-1/DSG/DSG/683803_v1

Under the circumstances, it is obvious that Mr. Strager submitted a false declaration to the Court in an effort to support a frivolous claim so that he could invade the First Amendment rights of the anonymous author who posted <u>truthful</u> statements about Mr. Strager's illegal business practices. This conduct is an abuse of the Court's process and warrants the imposition of serious sanctions.

As such, in addition to any other remedy the Court may find appropriate, Xcentric requests that the Court find Mr. Strager's declaration was submitted in bad faith and that the Court order Mr. Strager to pay the reasonable expenses, including attorney's fees, incurred by Xcentric pursuant to Fed. R. Civ. P. 56(g).

## IV. CONCLUSION

For all of these reasons, the Court should deny Ecommerce's Motion to Compel, quash the subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii), and award sanctions including costs and attorney's fees to Xcentric pursuant to Fed. R. Civ. P. 56(g).

DATED this ___ day of October 2008.

**JABURG & WILK, P.C.**

_____
Maria Crimi Speth
David S. Gingras
Attorneys for Xcentric Ventures, L.L.C.

10297-1/DSG/DSG/683803_v1